## Lilley Estates

*Smillie, Bean, Scirica & Davis* and *Saul, Ewing, Remick & Saul*, for accountant.

*Fox, Differ & Honeyman, Francis M. Richards, Jr.,* and *John B. H. Carter*, for claimant.

*William H. S. Wells*, p. p.

TAXIS, P. J., April 26, 1956.—Claim was presented at the audit against the estates of the above named minors by their stepmother, Mrs. Bettina Lilley, in the following cricumstances:

The mother of the minors, with whom they had been making their home, died in the fall of 1953. The mother and father had been divorced, and the father had married claimant in 1949. After the death of the mother, the father purchased a home consisting of a

mansion house and appropriate buildings and an outdoor swimming pool, on 12 acres of land, situated in Lower Merion Township, and he and his wife and the four minors occupied the property as a home until the father died on March 30, 1955. Thereafter, the widow and children continued to occupy the home until it was sold by the father's executors on October 7, 1955, for the sum of $107,500. It had been appraised, as part of the father's estate, at $85,250.

Before the father's death, the guardian of the estates of the minors had agreed to reimburse the father for all out-of-pocket expenses which the father incurred for the benefit of the children, as well as for one half of the operational expenses and servants' wages in maintaining the household, in amounts not to exceed $200 monthly for each child, or a total of $800 per month. Those expenses totaled $2,500 a month, on the average, as shown by the statements submitted by the father to the guardian in the father's lifetime.

On June 20, 1955, the guardian agreed with executrix of the estate of William Lilley, Jr., that the guardian would reimburse executrix for all out-of-pocket expenses of the children paid by her and for four-fifths of the operational expenses to May 31, 1955, on the basis that each of the persons occupying the premises should bear his or her share of the cost of operating the home. An itemized list of such expenditures was submitted at the audit by counsel for executrix. During this period the expenditures for operating the household amounted to but slightly more than half those of a similar length of time during the father's lifetime in 1954.

The estate's claim was originally presented for four-fifths of those expenditures, one-fifth against the estate of each of the four children, but the guardian objected to the amount of the claim as being excessive, for the reason that, during the period covered by the claim,

three of the children, for periods of approximately six weeks, did not occupy the home because they were at summer camps or at boarding schools. In consideration of such absences, executrix has offered to reduce her claim for food during the period to two-thirds of the total cost of the food. As to the balance of her claim, she asserts that it was impossible for her to discharge the servants during the periods when some of the children were not at home and to rehire the servants when the children were there, and that it was likewise impossible to reduce substantially the other costs of maintaining the home, such as for light, water, fuel and repairs during those periods. She urges that her keeping the household operating during the period in question was not only for the welfare, comfort and convenience of the children, but that the sale of the house as a "going concern" contributed to the substantial increase in the selling price of the premises over the appraisement, and that the children, as remaindermen under their father's will, will be benefited to the extent of that increase. This argument is meritorious.

The widow was under no legal obligation to support or maintain a home for her husband's children out of her own fund. She might have elected to vacate the premises and to go her separate way and to require the children to do likewise immediately upon the death of their father. Such a course on her part would have been somewhat of a shock to the children's morale, and even to their sense of security, although the estate of each child, aside from the funds now accounted for, is much more than sufficient to afford a comfortable home and maintenance, being approximately a half million dollars.

Where, as here, stepchildren have adequate means to bear their proportionate share of household and living expenses, it would be most inequitable to compel the stepmother to assume a financial burden which she

could ill afford to assume. A contrary conclusion would precipitate a dilemma for her to decide whether to support the children at the risk of nonreimbursement even though the children could easily make payment, or to turn the children out to find homes for themselves, which would be most undesirable, if not inhuman.

The amount of money in dispute between executrix and guardian may be regarded as de minimus although, undoubtedly, it was the right and duty of the guardian to present the matter.

I have carefully considered the claim and all the circumstances as they were presented to me, and I conclude that it is a just, fair and proper one, and it is allowed as to one fourth from the estate of each of the minors as originally presented, as modified to the extent of the reduction offered by claimant as to the amount of expenditure for food, as above noted.